**SO ORDERED.**

**SIGNED this 08 day of November, 2010.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

IN RE:

| | |
|---|---|
| **THE NORTHERN OUTER BANKS ASSOCIATES, LLC,** | **CHAPTER 11**<br>**CASE NO. 10-01292-8-RDD** |
| **DEBTOR** | |

## ORDER GRANTING RELIEF FROM AUTOMATIC STAY

Pending before the Court is the Motion for Relief from the Automatic Stay or in the Alternative, Motion for Adequate Protection filed by Wells Fargo Bank, National Association, successor by merger to Wachovia Bank, National Association ("Wells Fargo") on June 21, 2010 (the "Motion") and the Response in Opposition to the Motion for Relief from Stay or in the Alternative, the Motion for Adequate Protection filed by The Northern Outer Banks Associates, LLC (the "Debtor") on July 6, 2010 (referred to collectively herein with the Supplement as the "Response").[1] The Court conducted a hearing on the Motion and the Response on September 30, 2010 in New Bern, North Carolina and continued that hearing on October 7, 2010 in Wilson, North Carolina.[2]

---

[1] Wells Fargo filed a Supplement to Motion on July 2, 2010 (the "Supplement").

[2] The Motion was originally scheduled for hearing on July 22, 2010. However, on July 22, 2010, the matter was referred to mediation. Since mediation was unsuccessful, this matter was reset for hearing on September 30, 2010.

On February 19, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is a North Carolina limited liability company and owns real estate consisting of approximately 5.35 acres of undeveloped property, located at 6195 Croatan Highway, Southern Shores, North Carolina (the "Real Property"). The Debtor designated itself as a single asset real estate ("SARE") entity, as defined under 11 U.S.C. §101(51B) of the Bankruptcy Code, and is therefore, governed by the provisions of 11 U.S.C. § 362(d)(3).

Wells Fargo is the holder of a promissory note in the principal amount of two million two hundred fifty thousand dollars ($2,250,000.00) executed on January 23, 2007 by both the Debtor and Bruce S. Pollak ("Mr. Pollak"), a managing member of the Debtor (the "Note"). As of the Petition Date, the balance due under the terms of the Note was $2,101,508.71, exclusive of attorneys' fees and costs. The parties do not dispute that the Note is in default.

In addition to executing the Note, the Debtor and Mr. Pollak executed a Deed of Trust granting Wells Fargo a first priority lien against the Real Property based on the indebtedness described in the Note.

The Debtor filed its Plan of Reorganization on May 20, 2010, ninety days after the filing of its voluntary chapter 11 petition (the "Plan"). Also on that date, the Debtor made a payment to Wells Fargo equal to one month of interest at the non-default contract rate in the amount of five thousand eight hundred sixty seven dollars and ninety nine cents ($5,867.99) on May 20, 2010, as required by 11 U.S.C. § 362(d)(3). Since that time, the Debtor has made no further payments.

The Plan proposes for the Debtor to retain possession and control of the Real Property for an eighteen (18) month period for the purpose of marketing and possible sale of the Real Property (the "Marketing Period"). The Plan provides that during the Marketing Period the Debtor need not

make any payments to Wells Fargo but that interest would accrue at three and a half percent (3.5%).[3] Should the Debtor fail to consummate a sale of the Real Property during the Marketing Period, the Plan proposes that Wells Fargo be required to amortize the balance due on the Note due at the expiration of that period over twenty (20) years at an interest rate of three and a half percent (3.5%) with a five (5) year call. The Plan does not propose any distributions to unsecured creditors until such time as the Real Property is sold. The Plan fails to address whether any payments will be made to unsecured creditors if the Real Property is not sold within the Marketing Period.

Section 362(d) of the Bankruptcy Code provides that a Court may grant relief from the automatic stay - "(1) for cause; (2) if the debtor has no equity in the property and the property is not necessary to an effective reorganization; or (3) in a single asset real estate case, 90 days after filing unless the plan of reorganization 'has a reasonable possibility of being confirmed within a reasonable time,' or the debtor 'has commenced monthly payments that are in an amount equal to interest . . . on the value of the creditor's interest in the real estate.'" *See also In re Carolina Commons Dev., LP*, No. 09-011230-8-JRL, 2010 WL 1965895 at *1 (Bankr. E.D.N.C. May 17, 2010) (*citing* 11 U.S.C. § 362(d)(1)-(3)).

Wells Fargo asserts that it is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), (d)(2) and (d)(3). Wells Fargo argues: (1) "cause" exists to lift the automatic stay because of the lack of adequate protection of its interest in its collateral caused by its undersecured status and the Debtor's inability to make payments of interest and principal to Wells Fargo; (2)

---

[3] Debtor's proposed Plan stated an interest rate of "three and one-half percent (3.25%) per annum." During the hearing counsel cleared up this inconsistency, stating the correct interest rate was to be three and one-half percent (3.5%) per annum.

the property is valued at one million nine hundred ten thousand dollars ($1,910,000.00)[4], the Debtor has no equity in the collateral, and has no real possibility of reorganizing within a reasonable time; and (3) the Debtor is a SARE which has neither proposed a plan that has reasonable possibility of being confirmed within a reasonable time nor commenced regular monthly payments of interest to Wells Fargo.

The Debtor asserts that Wells Fargo is adequately protected by an equity cushion of approximately twenty five percent (25%) because the value of the property is two million eight hundred thousand dollars ($2,800,000.00), that the Real Property is necessary for the Debtor's effective reorganization, and the Debtor's plan is reasonable and able to be confirmed within a reasonable amount of time.

At the hearing, the Court received evidence including appraisals, expert testimony, testimony of the parties, tax values and sales of similar properties. After considering this evidence and other factors, such as, the length of time the Real Property has been listed for sale, the undeveloped and unimproved state of the Real Property, the qualifications of the appraisers that testified at the hearings, the possible zoning restrictions of the Real Property, and the unfavorable economic climate and real estate market conditions, the Court found the value of the Real Property to be one million nine hundred thousand ($1,900,000.00).[5] As a result, Wells Fargo's claim[6] is divided into secured and unsecured components. The secured portion of the claim is one million nine hundred thousand

---

[4]The appraisal of Mr. Gregory L. Bourne, dated June 16, 2010, and submitted into evidence, valued the Real Property at one million nine hundred ten thousand dollars ($1,910,000.00) with a twenty-four (24) to thirty-six (36) month marketing period.

[5]*See* Order Determining Value of Collateral docketed simultaneously with this Order.

[6]Wells Fargo filed a claim for $2,101,508.71.

($1,900,000.00) and the unsecured claim shall equal two hundred one thousand five hundred eight dollars and seventy one cents ($201,508.71). Additionally, the Debtor has failed to establish that an effective reorganization can be commenced within a reasonable time.

The Debtor is unable to make payments of principal and interest to Wells Fargo and has failed to present any evidence that its members are able or willing to infuse capital into the Debtor. Furthermore, the Debtor is unwilling to assume any of the risks associated with non-payment during the marketing period including the possibility that a sale does not come to fruition. The Debtor failed to present any evidence of post-petition financing opportunities. Without such evidence, the Debtor cannot establish that an effective reorganization can be commenced within a reasonable time.

"The provisions of § 362(d)(3) are mandatory: in a single asset real estate case the court *shall* grant stay relief from the stay unless the debtor files a confirmable plan of reorganization or commences monthly interest payments within 90 days of the bankruptcy filing." *In re Carolina Commons Dev., LP*, No. 09-011230-8-JRL, 2010 WL 1965895 at *2 (Bankr. E.D.N.C. May 17, 2010) (*citing* 11 U.S.C. § 362(d)(3)). The Plan is not confirmable, in that it is not feasible within the meaning of 11 U.S.C. § 1129(a)(11), and the Plan is commercially unreasonable, no impaired class has accepted the Plan, and the proposed treatment of the Wells Fargo claim is not fair and equitable.[7]

Based on the foregoing, the Motion for Relief from the Automatic Stay is **GRANTED**. In regard to the provisions of Rule 4001 (a)(3) of the Federal Rules of Bankruptcy Procedure, the Court orders otherwise. The automatic stay is terminated immediately as of the date of this Order.

---

[7] *See* Order Denying Confirmation of Chapter 11 Plan of Reorganization docketed in connection with this Order.

**SO ORDERED.**

**END OF DOCUMENT**